IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JEFFREY A. CALDWELL, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 3:04-cv-430 |
| BNFL, INC., | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

This is a retaliatory discharge action removed to this court from the Chancery Court for Roane County, Tennessee. Currently pending is the defendant's motion for summary judgment [Court File #13]. For the reasons that follow, the motion will be granted and this action will be dismissed.

### *Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiff.

Plaintiff Jeffrey A. Caldwell was initially employed by defendant BNFL, Inc., in April 2003 as a pipefitter in Oak Ridge, Tennessee. His hourly pay was determined in accordance with the wage schedule for craft employees established by a collective bargaining agreement. BNFL contracted with the United States Department of Energy to decommission and decontaminate various buildings at a nuclear power facility in Oak Ridge, Tennessee, referred to as the ETTP Project. As the work is completed, BNFL employees have been laid off.

Plaintiff remained as a pipefitter until he was moved to a foreman position sometime in July 2003, at which time he received an hourly rate increase under the union contract. As a working foreman, Mr. Caldwell performed both supervisory duties and manual work. He never possessed a security clearance while employed by BNFL.

On August 8, 2003, Mr. Caldwell received an injury on the job, tearing a biceps tendon in his right arm. He was unable to perform any work with his right arm, and surgery was performed to repair the biceps rupture. In approximately mid-September 2003, Mr. Caldwell was released to return to work on light duty. At the time of his return, his right arm was placed in a brace which locked his arm in place so that his range of movement was severely restricted. He was unable to move his arm away from his body and unable to straighten it. Because of the brace, Mr.

Caldwell was unable to put on the protective clothing required to work inside the work areas within the ETTP building and, therefore, could not perform his previous duties as a working foreman. He was removed from the foreman position, reclassified as a pipefitter, and assigned light duty work within his medical restrictions. He was paid the bargaining unit pipefitter journeyman rate which was several dollars per hour less than the working foreman rate. When Mr. Caldwell returned to duty in mid-September 2003, he was assigned to work in the warehouse for approximately six to eight weeks until he could again work inside the plant. No overtime was being worked in the warehouse. Thereafter, when he was able to work inside the plant, he was assigned to cleaning and decontaminating the sea-land boxes.

Mr. Caldwell remained on light duty restriction of little to no use of his arm from September 2003 through January 2004. Subsequently, in early January 2004, Mr. Caldwell had surgery on his right shoulder and did not return to work at BNFL.

Lloyd Nolan became the Area Manager over the group in which Mr. Caldwell was assigned in September 2003 when the previous manager, Von Hudson, left BNFL. Mr. Nolan's group finished its work on December 22, 2003. Mr. Nolan either laid off or transferred employees, including plaintiff Caldwell, to the

group reporting to James Miller, Decon and Final Status Survey Manager. Plaintiff contends that it is unclear whether he was transferred or laid off at that time. However, he concedes that he had not been laid off under Supervisor Nolan. Thus, the proof is undisputed that plaintiff would be ultimately laid off by Mr. Miller. There is also no evidence that Mr. Nolan discussed Mr. Caldwell individually with either Maggie Sims, a Human Resources officer, or Mr. Miller. Mr. Nolan retained employees based on their clearance status, keeping the cleared people and transferring uncleared. Mr. Nolan left BNFL on January 15, 2004.

Mr. Caldwell had not been released to return to work when he was laid off from BNFL by Mr. Miller on February 5, 2004. Mr. Caldwell was medically released to work by his physician in late May or June 2004.

BNFL, Inc.'s ETTP Project was winding down. The demobilization of the project included layoffs as the work was completed and the required skill mix on the remaining work changed. Layoffs were not conducted by seniority; however, such factors as the needed skill mix, hourly rates, performance of employees, and clearance status were considered. BNFL was able to reduce costs by assigning unskilled craft workers to perform work across craft lines at lower hourly rates.

4

Mr. Caldwell and Mr. Miller did not know one another. On February 2, 2004, Mr. Miller made the decision to lay off approximately 88 craft employees, including plaintiff. He discussed the layoffs with Supervisor George Vandergriff, who identified from a list of employees within his group approximately 30+ employees to be retained. After the initial 30+ retained employees were selected, all of the remaining employees were subsequently placed on a layoff list for February 5, 2004. Mr. Caldwell was in the group of employees not selected for retention.

Mr. Miller testified in his deposition that at the time he made the decision to lay off the approximately 88 employees who were not to be retained, he did not know that Mr. Caldwell had filed a workers' compensation claim. Employees classified as pipefitters were laid off at the same time as Mr. Caldwell, but pipefitters were also in the group of employees to be retained. Plaintiff suggests that Mr. Miller made misrepresentations in testifying that he did not know that Mr. Caldwell had filed a workers' compensation claim. However, there is no proof in the record that Mr. Miller knew at the time plaintiff was placed on the layoff list that plaintiff had filed a workers' compensation claim.

Plaintiff claims that testimony from Maggie Sims, the Human Resources manager, about a conversation she had with Mr. Miller suggests that Miller knew of the workers' compensation claim at the time plaintiff was placed on the layoff list.

However, it is clear from the testimony of Gwen Crenshaw, the BNFL nurse, that she contacted Ms. Sims after learning of plaintiff's layoff to determine if there was some way that Mr. Caldwell might be retained. Ms. Sims then contacted Miller, after the layoff had already been announced, and advised him that Mr. Caldwell was recuperating from surgery and might have a hard time finding a job. She asked if there was some other work available for him, such as an escort position, but Miller told her that, because plaintiff did not have a security clearance, he could not fill an escort position. There is not a question of material fact in the record to indicate that the decision-maker, Mr. Miller, knew of plaintiff's workers' compensation claim prior to placing him on the layoff list. All of the evidence suggests that Mr. Miller learned of plaintiff's injury and need to find alternate employment sometime after the layoff list was announced and when Ms. Sims contacted him about the plaintiff. Mr. Caldwell was contacted on February 5, 2004, by a fellow employee who was also being laid off, and advised that his name appeared on the layoff list.

## II.

### *Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

6

any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

III.

*Retaliatory Discharge*

In *Anderson v. Standard Register Co.*, 857 S.W.2d 555 (Tenn. 1993), the Tennessee Supreme Court sets forth the elements that an employee must prove in order to establish an actual claim for retaliatory discharge:

> 1. The plaintiff was an employee of the defendant at the time of the injury;
>
> 2. The plaintiff made a claim against the defendant for workers' compensation benefits;
>
> 3. The defendant terminated the plaintiff's employment; and
>
> 4. The claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the plaintiff's employment.

The Court went on to state that "the burden of proof rests ... upon the plaintiff to prove the elements of the cause of action, including a causal relationship between the claim for workers' compensation benefits and the termination of employment." *Id.* at 558. The Court further provided that:

> Proof of a causal link between the claim for benefits and the employee's discharge imposes upon the employer the burden of proof of showing a legitimate, non-pretextual reason for the employer's discharge.

*Id.*

8

In order to prevail, "there must be some proof of causation other than facts showing employment, the exercise of rights under the Workers' Compensation Act, and a subsequent discharge." The plaintiff may submit proof on the issue of causation through either direct or by circumstantial evidence. *Thomason v. Better-Bilt Aluminum Products, Inc.*, 831 S.W.2d 291 (Tenn.Ct.App. 1992). Circumstantial evidence is evidence that "proves a fact from which an inference of the existence of another fact may be drawn." *Id.* "It is well established that facts in civil cases may be established by circumstantial evidence alone." *Roberts v. Scholl, Inc.*, 1995 W.L. 424665 (Tenn.Ct.App. 1995).

IV.

### *Analysis*

Upon a careful review of the affidavits and deposition testimony presented, it is clear that plaintiff would not be able to prove to the jury by compelling circumstantial evidence that plaintiff's claim for workers' compensation benefits was a substantial factor in the defendant's motivation to terminate his employment. It is undisputed that Mr. Miller made the decision of who to keep and who to terminate based on the recommendation of Supervisor Vandergriff. It is undisputed that Mr. Vandergriff identified approximately 30 employees of various crafts that he wanted to keep and the remaining 88 were placed on the layoff list. There is no proof in the

record that Mr. Miller, at the time the layoff list was established, had any knowledge of the plaintiff or his workers' compensation claim. It is only through the plaintiff's speculation that a jury could conclude that someone, perhaps Mr. Vandergriff, suggested to Mr. Miller that plaintiff had filed a workers' compensation claim and that he could be retaliated against by placing him on the layoff list.

Plaintiff suggests that the testimony of Mr. Miller and Ms. Sims regarding a conversation about continuing the plaintiff's employment is confusing and misleading. Upon reviewing the deposition testimony in question, the confusion appears to be over when the conversation about the plaintiff's continued employment took place. However, it appears undisputed that the conversation took place sometime after the layoff list had been announced and Ms. Crenshaw asked Ms. Sims if there was some way the plaintiff might not be laid off because his shoulder injury would make work for him difficult to find. Regardless of this confusion, there remains no evidence that Mr. Miller was aware of the plaintiff's workers' compensation claim when he placed him on the layoff list. Certainly, there is no direct evidence or compelling circumstantial evidence by which a jury could find that the plaintiff's workers' compensation claim was a substantial factor in the decision to terminate him.

V.

*Conclusion*

In light of the foregoing, defendant's motion for summary judgment [Court File #13] will be granted and this action dismissed.

Order accordingly.

                                          *s/ James H. Jarvis*
                                       UNITED STATES DISTRICT JUDGE